UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

ROBERT ORTA-CASTILLO,

Petitioner,

v.

JAMES H. BRUTON,

Respondent.

Civil No. 00-2096 (RHK/FLN)

REPORT AND RECOMMENDATION

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254. These proceedings have been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons stated below, it is recommended that the petition be dismissed with prejudice pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.[1]

## I. BACKGROUND

On July 2, 1992, a Ramsey County jury found Petitioner guilty of second-degree felony murder and kidnapping. He received a 480-month prison sentence for the murder conviction, plus a 292-month sentence for the kidnapping conviction. He is presently serving his prison term at the Minnesota Correctional Facility in Oak Park Heights, Minnesota.

[1] Rule 4 provides that "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

FILED OCT 23 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Following his conviction, Petitioner filed a direct appeal with the Minnesota Court of Appeals. In an unpublished opinion dated September 14, 1993, the Court of Appeals overturned Petitioner's kidnapping conviction, and affirmed his murder conviction. State v. Orta Castillo, No. C6-92-2230 (Minn.App. 1993), 1993 WL 355903 (unpublished op.). The Minnesota Supreme Court denied Petitioner's request for further review by order dated November 16, 1993. Id.

Petitioner later filed a post-conviction motion in the state district court where he was convicted. That motion was denied on April 27, 1995, and Petitioner apparently did not appeal the trial court's ruling. (Petitioner's "Memorandum And Affidavit Thereto Of Procedural History," [Docket No. 6], ¶ 10.[2])

On March 15, 1996, Petitioner filed a federal habeas corpus petition in this District, challenging his state court conviction. (Castillo v. Skon, Civil No. 96cv248 (RHK/FLN).) That petition was summarily dismissed by order dated February 24, 1997, because Petitioner had not exhausted his state court remedies for each of the claims he was attempting to raise in federal court.

On January 21, 1997, (just a few weeks before Petitioner's first federal habeas action was dismissed), a co-defendant in Petitioner's criminal case allegedly "signed [an] affidavit recanting trial testimony against Petitioner." (Pet.Mem., ¶ 11.) According to Petitioner's procedural chronology, the next event of significance occurred

---

[2] Petitioner's original habeas corpus petition did not provide a complete procedural history of his case, so he was directed to file a supplement. (Docket No. 5.) Petitioner responded by filing the document entitled "Memorandum And Affidavit Thereto Of Procedural History," (Docket No. 6), referred to hereafter as "Pet.Mem."

on July 6, 1998, when the state district court "rejected" the co-defendant's affidavit recanting his trial testimony "since no action [was] pending." (Pet.Mem., ¶ 12.) On February 22, 1999, Petitioner filed another state post-conviction motion, presumably for the purpose of properly presenting the alleged recantation affidavit. (Pet.Mem., ¶ 14.) Petitioner's second post-conviction was denied by the state district court on September 14, 1999, and the Minnesota Court of Appeals upheld that ruling on May 26, 2000. (Pet.Mem., ¶s 16 and 18.) Petitioner apparently elected not to ask the Minnesota Supreme Court to review the second post-conviction proceedings.

On September 7, 2000, Petitioner filed his current application for federal habeas corpus relief. (Docket No. 1.) Six grounds for relief are sted in the present petition: (1) that Petitioner was denied due process because the trial court allegedly committed several errors on issues pertaining to the admissibility of evidence; (2) that the "prosecutor committed 103 acts of misconduct;" (3) that Petitioner was deprived of a fair trial by the "cumulative effect" of the trial judge's allegedly erroneous evidentiary rulings and the prosecutor's alleged misconduct; (4) that Petitioner's sentence was "biased," "disproportionate," and "illegal;" (5) that Petitioner received ineffective assistance of appellate counsel, and (6) "recantation of co-defendant." The merits of these claims will not be addressed, however, because the Court finds that the instant petition was not filed within the one-year time limit prescribed by 28 U.S.C. § 2244(d). Instead, it will be recommended that the petition be summarily dismissed due to untimeliness.

## II. DISCUSSION

On April 24, 1996, President Clinton signed the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), which effected significant changes in the federal habeas corpus statutes. One of those changes appears at 28 U.S.C. § 2244(d), which establishes a one-year statute of limitations for habeas corpus petitions filed by state prisoners seeking federal court review of a conviction or sentence. This new statute provides that:

> "**(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(d)(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

In most cases, the AEDPA statute of limitations will begin to run, pursuant to § 2244(d)(1)(A), on the date when the petitioner's judgment of conviction becomes final

by the conclusion of direct review. In this case, however, Petitioner could argue that the starting date for the statute of limitations period must be determined pursuant to § 2244(d)(1)(D), and that the one-year limitations period did not actually begin to run until he acquired "the factual predicate" on which some of his claims are based -- namely the co-defendant's alleged "recantation affidavit." Assuming (without deciding) that the alleged recantation affidavit causes § 2244(d)(1)(D) to be applicable here, the one-year statute of limitations did not begin to run in this case until January 21, 1997 -- the date when the recantation affidavit was signed. (Pet.Mem. ¶ 11.) However, even if the statute of limitations did not begin to run until January 21, 1997, the one-year limitation period still would have expired as of January 21, 1998 -- which was more than two-and-half years before the instant petition was filed.

Of course, the tolling provisions of 28 U.S.C. § 2244(d)(2) must also be considered. Under that subsection, the statute of limitations is tolled, (i.e., it does not run), during any period of time when "a properly filed application for State post-conviction or other collateral review" is pending. There are several tolling possibilities to consider here, but none of them can save the instant petition from being time-barred.

First, it could be argued that the statute was tolled while Petitioner's previous federal habeas petition was pending. That argument is unavailing, however, for two reasons. First, most courts have concluded that § 2244(d)(2) tolls the AEDPA statute of limitations only during the pendency of state post-conviction proceedings, and that federal post-conviction proceedings, (i.e., a federal habeas corpus action), will not toll the statute. Jiminez v. Rice, 222 F.3d 1210, 1213-14 (9th Cir. 2000); Grooms v. Johnson, 208 F.3d 488,

489 (5th Cir. 1999); Jones v. Morton, 195 F.3d 153, 159 (3rd Cir. 1999); but see Walker v. Artuz, 208 F.3d 357. 359-61 (2nd Cir. 2000) (holding that the statute is tolled while federal habeas petition is pending), pet. for cert. filed July 21, 2000, (No. 00-121). Secondly, even if the statute of limitations was tolled while the prior federal habeas petition was pending, the statute would have begun to run again on February 24, 1997 -- the date when the prior habeas petition was dismissed. The instant petition was not filed within a year after that date, so it still would be time-barred even if the statute of limitations had been tolled while the first federal habeas case was pending.

It also could be argued that the statute of limitations was tolled during the pendency of Petitioner's second state post-conviction proceedings -- and indeed, it probably was tolled during that time. However, Petitioner's second post-conviction motion was not filed until February 22, 1999, by which time the one-year limitation period had long since expired. Again, the starting date for the one-year limitations period was January 21, 1997, (assuming that the recantation affidavit triggered a late starting date, pursuant to § 2244(d)(1)(D)), and the statute of limitations expired a year later on January 21, 1998. Because the statute had expired more than a year before Petitioner's second post-conviction proceedings were commenced, those proceedings cannot help to save the instant petition. Tolling the statute of limitations after the statute has already expired is meaningless.[3]

---

[3] Petitioner might believe that a post-conviction motion does much more than just temporarily stop the statute of limitations from running while the post-conviction proceedings are pending. He may think that filing a post-conviction motion actually 'resets the clock,' so that a prisoner gets a fresh new one-year limitation period that does not begin until the state post-conviction proceedings are completed. That, however, is simply

Finally, the Court has considered Petitioner's notation that on July 6, 1998, his co-defendant's recantation affidavit was "rejected for filing by [the state] district court since no case [was] pending." (Pet. Mem., ¶ 13.) While it is not clear what Petitioner submitted to the state court prior to July 6, 1998, it is clear that his submission was summarily rejected because it was not properly filed. It also is clear that only a "properly filed" application for state post-conviction relief will toll the statute of limitations pursuant to § 2244(d)(2). Fernandez v. Sternes, No. 99-2887 (7th Cir. Sept. 21, 2000), 2000 WL 1358730 at * 1 ("whether a petition is 'properly filed' depends on state law, so that if a state court accepts and entertains it on the merits it has been 'properly filed' but that if the state court rejects it as procedurally irregular it has not been 'properly filed'"); Lovasz v. Vaughn,

---

not the case. As explained in Sorce v. Artuz, 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999):

> "The tolling provision of AEDPA does not allow the one year period to run anew each time a post-conviction motion is ruled upon. Instead, the toll excludes from the calculation of the one year period any time during which post-conviction relief is pending. [Citation omitted.] Thus, the provision stops, but does not reset, the clock from ticking on the time in which to file a habeas petition. It cannot revive a time period that has already expired." (Emphasis added.)

See also Lucidore v. New York State Div. of Parole, No. 99 CIV 2936 AJP, (S.D.N.Y. 1999), 1999 WL 566362 at * 4 ("Section 2244(d) does not state that the AEDPA's one-year statute begins to run anew after decision on a state collateral attack; such an interpretation would allow an inmate to avoid the effect of the AEDPA's one-year [statute] of limitations by bringing a belated state collateral attack"), aff'd 209 F.3d 107 (2nd Cir. 2000), cert. denied, 2000 WL 949129 (U.S. Oct. 2, 2000); Broom v. Garvin, 99 Civ. 1083 (JSM) (S.D.N.Y. Apr. 26, 1999), 1999 WL 246753 at *1 ("the filing of a collateral attack in the state court tolls the AEDPA statute of limitations during the period that it is pending, but it does not commence a new limitations period").

134 F.3d 146, 148 (3rd Cir. 1998) ("'a properly filed application' is one submitted according to the state's procedural requirements"). Petitioner's own chronology of events plainly demonstrates that his second post-conviction motion was not properly filed – and therefore could not have tolled the statute of limitations – until February 22, 1999. By that time, as previously noted, the statute of limitations had already expired.

In sum, even if the relevant statutory provisions and historical events are construed most favorably to Petitioner, his current federal habeas petition is definitely time-barred. Assuming that the statute did not start to run until the recantation affidavit was signed, (rather than upon completion of Petitioner's direct state court appeals), the one-year limitation period began on January 21, 1997. Even if the statute was tolled while the first federal habeas case was pending, the statute would have begun to run no later than February 24, 1997. No other tolling occurred until Petitioner filed his second state post-conviction action on February 22, 1999, and by that time the one-year limitations period was already long past its expiration date.[4]

---

[4] Even if the instant petition were not time-barred, the claims that Petitioner raised for the first time in his post-convictions motions, (which would include any claims based on the recantation affidavit), could not be entertained here. All of those claims have been procedurally defaulted, because they were never fairly presented to the Minnesota Supreme Court. See McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("before we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court"); O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1732 (1999) ("[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process") (emphasis added).

Because it plainly appears on the face of the petition that Petitioner is not entitled to federal habeas corpus relief, it is recommended that his petition be summarily dismissed pursuant to Rule 4. Moreover, because Petitioner is no longer eligible for federal habeas corpus relief, it is recommended that the petition be dismissed with prejudice. Finally, because Petitioner's habeas corpus petition must be dismissed, his application for leave to proceed in forma pauperis, (Docket No. 2), must be denied. See Kruger v. Erickson, 77 F.3d 1071, 1074, n. 3 (8th Cir. 1996) (per curiam) (IFP application should be denied where habeas petition cannot be entertained).

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1. Petitioner's "Application To Proceed Without Prepayment Of Fees And Affidavit," (Docket No. 2), be **DENIED**; and

2. The petition for writ of habeas corpus, (Docket No. 1), be **DISMISSED WITH PREJUDICE.**

Dated: Oct. 23, 2000

Franklin L. Noel
FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.